1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | | |
|---|---|---|
| **JOSEPH C. McAFEE** | ) | |
| **Plaintiff,** | ) | **Case  No. EDCV 07-01670 AJW** |
| | ) | |
| **v.** | ) | **MEMORANDUM OF DECISION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

### Administrative Proceedings

The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2]. In a written hearing decision that constitutes the final decision of the Commissioner, an Administrative Law Judge ("ALJ") found that plaintiff had severe impairments consisting of neck and back pain, diabetes mellitus, sleep apnea, depressive disorder, and somatoform disorder. [Administrative Record ("AR") 18-19; JS 2].  The ALJ denied benefits on the ground that plaintiff retained the residual functional capacity to perform work available in significant numbers in the national economy.[AR 11-17; JS 1-2].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision.  Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).


**Discussion**

**Medical opinion evidence**

Plaintiff contends that the ALJ failed properly to consider the opinions of Dr. Sadler, his workers' compensation treating orthopedist, Dr. Bagner, the Commissioner's consultative psychiatric examiner, and Mark Erickson, M.S., MFT, plaintiff's treating therapist at San Bernardino County Department of Mental Health ("County Mental Health"). [JS 3-14].

Although not binding on the Commissioner with respect to the existence of an impairment or the ultimate issue of disability, "[t]he opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007)(citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); see Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).  When a treating physician's medical opinion as to the nature and severity of an individual's impairment is well-supported and not inconsistent with other substantial evidence in the record, that opinion must be given controlling weight. Orn, 495 F.3d at 631-632; Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) ; Social Security Ruling ("SSR") 96-2p, 1996 WL 374188 SSR 96-2p, 1996 WL 374188, at *1-*2. The ALJ must provide clear and convincing reasons, supported by substantial evidence in the record,

2

1   for rejecting an uncontroverted treating source opinion. If contradicted by that of another doctor, a treating

2   or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial

3   evidence in the record.  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004);

4   Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

5           **Dr. Sadler**

6           Dr. Sadler treated plaintiff for back, neck, and bilateral hand pain from May 1999 until December

7   2000, a period of sixteen months. [See AR 263-355].  Dr. Sadler prepared a permanent and stationary report

8   on April 4, 2000 describing in detail his findings of work-related functional restrictions pertaining to

9   plaintiff's neck, low back, and upper extremities, as well as the objective medical evidence and subjective

10  symptoms supporting his assessment. Dr. Sadler reiterated those restrictions in a follow-up permanent and

11  stationary examination report in December 2000. [AR 263-295, 312-340].

12          The ALJ did not describe Dr. Sadler's detailed findings beyond remarking that Dr. Sadler "opined

13  Claimant was precluded from very heavy work with some additional restrictions." [AR 13].  The ALJ did

14  not expressly state that he was rejecting Dr. Sadler's opinion, nor did he articulate any specific reasons for

15  doing so.  Instead, the ALJ said that he was adopting the opinion of the non-examining medical expert, Dr.

16  Nafoosi, who opined that plaintiff could sit for eight hours, or stand and walk for six hours, during an eight-

17  hour day, provided that he could change positions each hour from one to three minutes, only occasionally

18  had to balance, stoop, kneel, crouch, crawl, and squat, and did not have to hold his head in a fixed position

19  for more than an hour before being allowed to change positions briefly.  [AR 577-578]. The ALJ attempted

20  to justify his reliance on Dr. Nafoosi's opinion by describing it as "the most restrictive physical medical

21  source opinion of record," but even without analyzing the implications of Dr. Sadler's workers'

22  compensation disability ratings, it seems apparent that Dr. Sadler imposed functional restrictions that Dr.

23  Nafoosi did not, including a prohibition against (1) repetitive neck movements, (2) "very prolonged lower

24  extremity weight bearing," (3) "very prolonged sitting," (4) "very repetitive,""very prolonged," or "very

25  forceful" gripping or grasping, and (5) "repetitive" or "prolonged" keyboarding. [AR 290-291].

26          Workers' compensation disability ratings are not controlling in disability cases decided under the

27  Social Security Act, and the terms of art used in the California workers' compensation guidelines are not

28  equivalent to Social Security disability terminology. See Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996);

1   Desrosiers v. Sec'y of Health &  Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); 20 C.F.R. §§ 404.1504,

2   416.904. Nonetheless, the ALJ may not ignore a doctor's medical opinion merely because it was issued for

3   use in a workers' compensation case. See Lester, 81 F.3d at 832 (holding that the ALJ erred in rejecting a

4   physician's reports because they "were clearly obtained by the claimant's attorney for the purpose of

5   litigation," and stating that "[t]he purpose for which medical reports are obtained does not provide a

6   legitimate basis for rejecting them"); Coria v. Heckler, 750 F.2d 245, 247-248 (3d Cir.1984) (holding that

7   ALJ erred in failing to consider medical reports submitted in state workers' compensation proceeding).

8   Rather, the ALJ must consider workers' compensation medical opinions and must "translate" workers'

9   compensation terms of art in order to accurately assess the implications of those opinions for the Social

10   Security disability determination. See Booth v. Barnhart, 181 F.Supp.2d 1099, 1105-1109 (C.D. Cal. 2002).

11       The ALJ touched on Dr. Sadler's opinion but did not adequately consider his opinion or give reasons

12   for rejecting it. The ALJ said that he credited Dr. Nafoosi's opinion because it was supported by the

13   objective medical evidence and consistent with the record as a whole, because of Dr. Nafoosi's areas of

14   specialization, and because of "new evidence obtained after the State medical consultant review." [AR 16].

15   It is not clear what "new evidence" the ALJ was referring to.  The remaining factors were properly

16   considered in assessing the weight to given Dr. Nafoosi's opinion.  See 20 C.F.R. §§ 404.1527(d)(2),

17   416.927(d)(2).[1] However, the ALJ never analyzed whether or to what extent those factors favored the

18   treating source opinion of Dr. Sadler over that of Dr. Nafoosi.  See Orn, 495 F.3d at 632 (explaining that

19   a treating physician's opinion that is contradicted by substantial evidence in the record, such as the opinion

20   of an examining physician based on independent clinical findings, is not entitled to controlling weight;

21   however, that opinion is "still entitled to deference" and should be evaluated using the factors set forth in

22

23       [1]Those factors include the length of the treatment relationship, the frequency of examination by
the treating physician, and the nature and extent of the treatment relationship between the patient
24   and the treating physician.  Additional factors relevant to evaluating any medical opinion include
the degree to which the opinion is supported by other evidence in the record, the "quality of the
25   explanation provided" by the physician, the consistency of the medical opinion with the record as
a whole, the physician's speciality, and "[o]ther factors" such as the degree of understanding a
26   physician has of the Administration's "disability programs and their evidentiary requirements" and
the degree of his or her familiarity with other information in the case record. Orn,495 F.3d at 631;
27   20 C.F.R. §§ 404 .1527(d)(2)-(6),  416.927(d)(2)-(6).

28

the Commissioner's regulations)(quoting SSR 96-2p at 4); see Edlund, 253 F.3d at 1157. For example, not only did Dr. Sadler treat plaintiff for sixteen months, he was an orthopedist and therefore better qualified by speciality than Dr. Nafoosi to evaluate plaintiff's orthopedic impairments, which played a greater role in Dr. Nafoosi's functional assessment than plaintiff's diabetes and sleep apnea.[See AR 14, 578].

Therefore, the ALJ erred in failing to articulate specific, legitimate reasons supported by substantial evidence in the record for rejecting Dr. Sadler's treating source opinion.

### Consultative psychiatric examiners

Plaintiff also contends that the ALJ failed to provide specific, legitimate reasons for rejecting the opinion of the Commissioner's consultative psychiatric examiners, Dr. Woodard and Dr. Bagner.

Dr. Woodard examined plaintiff in August 2002. He elicited a history and conducted a mental status examination. [AR 392-394]. Dr. Woodard opined that plaintiff had a depressive disorder, not otherwise specified ("NOS") that would cause

> impairments [that] are slight to moderate impairment for withstanding normal stresses and pressures in the workplace; slight for interacting with supervisors, co-workers, and the public, for maintaining concentration and attention, and for performing detailed, complex tasks; and none for performing simple, repetitive tasks. Incapacity is none for working on a continuing basis without special supervision and slight to moderate for completing a normal workweek without interruption.

[AR 394].

Dr. Bagner examined plaintiff on February 20, 2003. He elicited a history and conducted a mental status examination. [AR 430-433]. Dr. Bagner opined that plaintiff had a depressive disorder, NOS. Dr. Bagner opined that plaintiff would have (1) mild limitations interacting with supervisors, peers, and the public, maintaining concentration, and completing simple tasks; (2) mild to moderate limitations handling normal stresses at work; and (3) moderate limitations completing complex tasks and completing a normal workweek without interruption. [AR 433].

The ALJ acknowledged that "[p]sychological consultative examinations from August 2002 and February 2003 suggested a depressive disorder with mild to moderate functional limitations." [AR 14 (citing AR 392-394, 430-433)]. The ALJ said nothing more about those examining source opinions. He adopted the testimony of the Dr. Malancharuvil, a medical expert who testified that plaintiff had a depressive

disorder, NOS, and that his "functional limitations are that he is certainly capable of simple work but is restricted to moderately complex tasks up to four or five instructions in a habituated setting" without demand for safety operations, hazardous machinery operation, or jobs requiring excessive speed, such as on an assembly line. [AR 581-582].

Both Dr. Woodard and Dr. Bagner indicated that plaintiff would have up to moderate limitations completing a normal workweek without interruption and withstanding normal work pressures. Those restrictions are not accounted for in Dr. Malancharuvil's opinion. In general, the opinions of examining physicians are entitled to greater weight than those of non-examining physicians, and the ALJ must articulate specific and legitimate reasons based on substantial evidence for rejecting a controverted examining source opinion. The ALJ did not fulfill that obligation.

In addition, Dr. Malancharuvil apparently was unaware that plaintiff had received therapy from Mr. Erickson, a marriage and family therapist, until plaintiff's counsel brought that fact to his attention during the hearing. [See AR 579-588]. Although Dr. Malancharuvil testified that plaintiff's treatment history was not "sustained" and did not change his testimony, it is not clear whether Dr. Malancharuvil or the ALJ adequately considered plaintiff's testimony about his reasons for discontinuing therapy (namely, difficulty getting to his appointments and limitations on his insurance coverage). Warre v. Comm'r of the Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2005)("[B]enefits may not be denied to a disabled claimant because of a failure to obtain treatment that the claimant cannot afford."); see also Carmickle v. Comm'r, Soc. Sec. Admin. 533 F.3d 1155, 1162 (9th Cir. 2008)(noting that "although a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment").

**Remedy**

In general, the choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or for payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa, 367 F.3d at 886 (quoting

INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)).   A district court, however,

> should credit evidence that was rejected during the administrative process and remand for
> an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for
> rejecting the evidence; (2) there are no outstanding issues that must be resolved before a
> determination of disability can be made; and (3) it is clear from the record that the ALJ
> would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for further proceedings turns upon the likely utility of such proceedings."  Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593 (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful"). For purposes of applying this test, the court has discretion not to require the "crediting as true" of evidence rejected for insufficient reasons.  See Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003); Bunnell v. Barnhart, 336 F.3d 1112, 1115-1116 (9th Cir. 2003).

Because there are outstanding issues to be resolved, including whether plaintiff can work with the limitations supported by a proper assessment of the medical source opinions, the appropriate remedy is a remand for further administrative proceedings and a new hearing decision.  Because the ALJ's credibility determination rested, in part, on his faulty assessment of the medical opinion evidence, the ALJ is directed to reevaluate the credibility of plaintiff's subjective complaints on remand and to make appropriate findings reflecting application of the relevant factors.[2]

---

[2]    In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented," including the following factors:  (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity, and environmental conditions; (4) the type, dosage, effectiveness and adverse side effects of any pain medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other measures used by the claimant to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional restrictions due to such symptoms. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also SSR 96-7p, 1996 WL 374186, at *3 (clarifying the Commissioner's policy regarding the evaluation of pain and other symptoms). The ALJ also may employ "ordinary techniques of credibility evaluation," considering such factors as (8) the claimant's reputation for truthfulness; (9) inconsistencies within the claimant's testimony, or between the claimant's testimony and the claimant's conduct; (10) a lack of candor by the claimant regarding matters other than the claimant's subjective symptoms; (11) the claimant's work

**Conclusion**

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards.  Accordingly, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**


DATED:   January 12, 2009

_____
ANDREW J. WISTRICH
United States Magistrate Judge

---

record; and (12) information from physicians, relatives, or friends concerning the nature, severity, and effect of the claimant's symptoms.  See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).